## JOHN RILEY v. GALVESTON CITY RAILWAY COMPANY.

### Delivered April 30, 1896.

**Fellow Servants Act—Street Railway Corporations not Included.**
The act of May 4, 1893, defining who are fellow servants, while applicable by its terms to "any railway corporation," does not include street railway companies, and the latter are not liable for injuries to an employe resulting from the negligence of a fellow servant.

APPEAL from Galveston.   Tried below before Hon. WILLIAM H. STEWART.

*W. B. Denson,* for appellant.

*James B.* and *Chas. B. Stubbs,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—The appellant sued appellee for the recovery of damages for personal injuries received by him while in the service of appellee, and which resulted, as appellant alleged, from the negligence of appellee.  The petition averred that plaintiff, while engaged in placing a wire through an insulator on one of the lines of defendant company, was thrown from a stepladder, upon which he was standing, to the ground, and was thereby severely injured; that his fall was caused by the negligence of one Payne, who, it was alleged, was a vice-principal of the defendant, in suddenly and violently pulling, contrary to the directions of plaintiff, the wire which he was placing in the insulator.  The defendant denied the allegations of the petition, and alleged that Payne was a fellow servant of plaintiff, and charged that plaintiff's injury was the result of his own negligence.  Judgment was given for the defendant on the trial of the cause, and plaintiff appealed to this court.

The record presents two questions, one of fact and one of law, which, if determined adversely to appellant, will necessitate an affirmance of the judgment appealed from.  The appellant, while in the service of appellee, the evidence shows, was injured by falling from a stepladder, upon which he was standing for the purpose of placing a wire through an insulator; in this work he was being assisted by Payne, and one other servant of the defendant company, Payne being the foreman under whose immediate direction and supervision the work was being done.  Having placed the wire, a large one, No. 4, upon the insulator, which was smaller than it should have been, considering the size of the wire, appellant directed his assistants to pull it, they being

on the ground and having hold of one part of the wire, and the appellant another part. When his assistants had pulled sufficiently in the judgment of appellant, he ordered them to desist; but Payne, disregarding this order, assisted by the other employe, gave another pull upon the wire, which caused it to slip from the insulator, and to strike appellant, and throw him to the ground, a distance of seven feet, and by the fall one of his legs was broken. The evidence establishes clearly that Payne was the foreman of the gang, and that appellant was subject to his orders; but whether Payne had authority from the defendant company to employ and discharge those who worked under him, is a question upon which the evidence is conflicting; but, we are of the opinion, that there was sufficient evidence before the court to sustain the finding, that Payne did not have such authority. Such being the case, Payne was the fellow servant of appellant, unless the act known as the "fellow servants" act, includes within its provisions the employes of street railways. While there is no direct decision that we are aware of, by our Supreme Court on this question, it is strongly intimated in case of Austin Rapid Transit Railway Co. v. Groethe, 88 Texas, that that act does not apply to street railways. The many and great dangers to life and limb, to which the numerous persons engaged in operating railroads, whose cars are moved by steam, were exposed, and the many different departments of labor in which such operatives were employed, were doubtless the principle reasons which induced the legislature to modify the rule of law heretofore governing the relation of master and servant and prescribing their reciprocal duties and liabilities. But these reasons for changing the law do not exist in respect to those engaged in operating street railways. The same article of the Revised Statutes which authorizes the creation of a private corporation for the construction and maintenance of a street railway authorizes also private corporations for the following purposes: for manufacturing or mining business; for the manufacture and supply of gas; for the supply of light or heat to the public by any means; for the building and navigation of steamboats, and the carriage of persons and property thereon; for the construction and maintenance of mills and gins. The employes of any one of these corporations are exposed to quite as great and as many risks as are the employes of street railways, and yet the legislature has not thought it necessary to make any change in the law for their protection. These considerations are persuasive, if not conclusive, that the intention of the legislature in passing the fellow-servants act was not to include street railways within its provisions, and that the words "any railway corporation" in the first section of the act should be restricted to the usual and popular import of that term; and that the act should be held not to embrace railways constructed and maintained upon streets and other highways in and contiguous to cities and towns for carrying persons. The Supreme Court of Kentucky, in the case of the Louisville & P. Railway Co. v. Louisville City Railway Co., held that a "railroad," or "railway," and a "street railroad," or "street railway," are, in both their technical and popular import, as distinct and

different things as a "road," and a "street," or as a "bridge" and a "railroad bridge." This was a case involving the interpretation of an act of the legislature, which, in furtherance of a certain railroad then in existence, and in which the State had an interest, declared that no other railroad should be constructed in certain streets in the city of Louisville. Subsequent to this act, a street railway was organized, and under license from the city, commenced to lay its track, and the railroad sought to enjoin the street railway company; and the injunction was denied on the ground as given above.     2 Duval, 175.

The Supreme Court of Washington, in the case of the Front Street Cable Railway Co. v. Johnson, 47 Am. & Eng. Railroad Cases, 287, following the Kentucky decision, supra, holds that an act giving a lien upon railroads had no application to street railways.  A further distinction between a "railway corporation" or "railroad corporation" and a "street railway corporation" is this: that the former owns not only its track and roadbed, but its right to their use and occupation is exclusive, while the latter owns no roadbed, nor is its occupancy of that portion of the street on which its track is laid exclusive, but it is only a licensee of the city, with privilege to use the street in common with the public. Our conclusion therefore is, that the act known as the "fellow servants act" and entitled "An act to define who are fellow servants and who are not fellow servants," etc., and approved May 4, 1893, does not apply to street railways.

The judgment of the lower court is affirmed.

*Affirmed.*