CROSBYTON–SOUTHPLAINS R. CO. v. RAILROAD COMMISSION OF TEXAS et al. (No. 5409.)

(Court of Civil Appeals of Texas. Austin. June 24, 1914. Rehearing Denied Oct. 28, 1914.)

1. RAILROADS (§ 216*)—SPUR TRACKS—LOCATION—RAILROAD COMMISSION—JURISDICTION—"BUSINESS"—"BUSINESS TENDERED."

Rev. St. 1911, art. 6715, provides that all railroads shall be required to build sidings and spur tracks sufficient to handle the business tendered to them, when ordered to do so by the Railroad Commission, and article 6716 provides penalties for failing to comply with such orders. Held that, while article 6715 is in a sense penal, it should nevertheless be construed so as to carry out the intention of the Legislature, and,

as so construed, the word "business" means public business, and the words "business tendered" are not to be restricted to business offered only at terminal and junction points and places established by a railroad company for receiving and discharging passengers and freight, but include business existing at points on the railroads which would be given to the company at such points if proper facilities were furnished, referring to the capacity of the tracks when built rather than to the place where they are required to be built; the words "sidings and spur tracks" being used in contradistinction to stations or depots.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 713; Dec. Dig. § 216.*

For other definitions, see Words and Phrases, vol. 1, pp. 915–926; vol. 8, pp. 7593, 7594.]

2. CARRIERS (§ 40*)—PUBLIC BUSINESS—FACILITIES—DUTY TO FURNISH.

It is a common-law duty of railroads to furnish reasonable facilities for the transaction of public business.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 120–122; Dec. Dig. § 40.*]

3. CONSTITUTIONAL LAW (§ 62*) — DELEGATION OF LEGISLATIVE POWER — RAILROAD COMMISSION — POWERS — RAILROAD FACILITIES—SPUR TRACKS.

The Legislature may properly leave to the discretion of the Railroad Commission the manner in which railroad companies in the state shall perform their duties to furnish reasonable facilities for the transaction of the business, including the time when, and the place where, specific facilities shall be furnished; precaution against the abuse of such discretion being provided by permitting an appeal to the courts.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 195–206½; Dec. Dig. § 62.*]

4. CONSTITUTIONAL LAW (§ 251*)—"DUE PROCESS OF LAW."

Want of due process of law may arise either from the fact that the law attempted to be enforced is void and is therefore no law, or that the forms of the law have not been observed, for which reason the party against whom the law is attempted to be enforced has not had his day in court.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 726, 727, 732; Dec. Dig. § 251.*

For other definitions, see Words and Phrases, vol. 3, pp. 2227–2256; vol. 8, p. 7644.]

5. RAILROADS (§ 216*) — REGULATION — SPUR TRACKS—INSTALLATION.

Evidence held to show the reasonableness of an order of the Railroad Commission requiring a railroad company to install a spur track for the receipt and delivery of car load freight at a particular town established on its line, both from the standpoint of the public and from a consideration of the financial condition of the railroad company.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 713; Dec. Dig. § 216.*]

6. RAILROADS (§ 9*)—PUBLIC SERVICE—DUTY TO FURNISH—REMUNERATION.

The fact that a particular public service required of a railroad company by the state may not be immediately remunerative is no reason for relieving the railroad company of the duty to perform it.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 12–19; Dec. Dig. § 9.*]

7. RAILROADS (§ 9*)—SPUR TRACKS—INSTALLATION—ORDER OF RAILROAD COMMISSION—ISSUES—EVIDENCE.

Where, in a suit to restrain enforcement of an order of the Railroad Commission requir-ing the installation of a spur track at R., complainant alleged that the people of R. were actuated by spite in building that town, evidence that complainant's manager stated to citizens of E., located some distance from the railroad, prior to the location of R., that there would be no depot or town between the starting point of the road and L., that only a switch would be built in the vicinity where C. and R. were subsequently located, that the C. Townsite Company refused to sell any lots in C., that such company was owned and controlled by the railroad officials, that R. was the nearest point to E. on the railroad where lots could be purchased, that the town of R. was laid out before a depot was built at C., and that he would spend a million dollars to destroy R., was admissible.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 12–19; Dec. Dig. § 9.*]

8. RAILROADS (§ 10*)—SHIPPING FACILITIES—SPUR TRACKS — INSTALLATION — MODE OF PROCEDURE—JURISDICTION OF COURT.

The Legislature having provided a specific method for compelling railroad companies to furnish adequate spur tracks and shipping facilities by means of proceedings before the Railroad Commission, as provided by Rev. St. 1911, arts. 6715, 6716, such method is exclusive; and hence the courts have no jurisdiction to enforce the statute until the matter has been first presented to and passed on by the commission, and then only to determine whether the commission's order is unjust and unreasonable.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 11; Dec. Dig. § 10.*]

Appeal from District Court, Travis County; C. A. Wilcox, Judge.

Suit by the Crosbyton-Southplains Railroad Company against the Railroad Commission of Texas and others. Judgment for defendants, and complainant appeals. Affirmed.

J. W. Burton, of Crosbyton, and Chas. Rogan, of Austin, for appellant. B. F. Looney, Atty. Gen., and Luther Nichels, Asst. Atty. Gen., for appellees.

Statement of the Case.

JENKINS, J. This suit was instituted by appellant against appellee the Railroad Commission on December 18, 1913, praying for an injunction to restrain said appellee from enforcing the following order, to wit:

"Railroad Commission of Texas.

"Austin, Texas, December 3, 1913.

"Hearing No. 1419. Ralls on Crosbyton-Southplains Railroad. Petition for Depot and Station Facilities.

"The above numbered and entitled cause having been called for hearing by the Commission at its November term, 1913, in pursuance of notice duly given herein under date of June 9, 1913, and the Commission having heard the evidence offered and facts presented by both the petitioners and the respondent railway company herein, and having duly considered the same, is of the opinion that the prayer of the petition herein should be granted. It is therefore hereby ordered by the Railroad Commission of Texas that the Crosbyton-Southplains Railroad Company be and it is hereby ordered and required to provide and thereafter to maintain, at the point on its line of railroad where the town of Ralls is located, an adequate and sufficient spur or side track for the accommodation of cars to be loaded with such car load ship-

ments of freight as it may be the desire of shippers to load at that point, and for the unloading of cars containing car load shipments of freight to be unloaded at that point. It is further ordered that said above-named railroad company be and it is hereby required to place on said spur or side track all empty cars demanded by shippers for the loading of car load shipments of freight thereon, as well as all cars containing car load shipments of freight where the unloading of same is demanded at that point. It is further ordered that, within 20 days from this date, this Commission be advised in writing by said above-named railroad company of the exact location in said town of Ralls, and the length of the spur or side track proposed by it to be provided in pursuance with the requirements of this order, in order that it may judge of the suitableness and adequacy thereof and for its approval, and that said spur or side track be completed and ready for use on or before 60 days from this date.

"[Signed]    William D. Williams,
"Earle B. Mayfield,
"Commissioners."

A temporary injunction was granted. On January 29, 1914, after trial on the merits before the court without a jury, judgment was rendered denying the relief prayed for by appellant, and ordering appellant to carry out the order of appellee.

Appellant alleged in its petition, as grounds of relief against the order of appellee above set out: That, if appellee has any power to order sidings and spurs, it can do so only when such sidings and spurs are for public use, and then only at (1) places of starting; (2) junctions of other roads; and (3) sidings and stopping places already established. That appellant was incorporated April, 1910, to build a railroad from Crosbyton to Lubbock, a distance of 39 miles, and immediately thereafter located its right of way and its depots as follows: Crosbyton; Cedric, 11⅔ miles west of Crosbyton; Lorenzo, 18¹/₁₀ miles west of Crosbyton; Idalou, 26⁴/₁₀ miles west of Crosbyton; and at Lubbock. That the country at that time was sparsely settled. That Cedric is conveniently located to transact all business offered the railroad in the territory immediately east and west and north and south for 20' miles, being the same territory that is adjacent to Ralls, and that it has supplied all necessary facilities at Cedric for the transaction of such business. That there was no town at Ralls at the time it located its depot at Cedric, and that the people who moved to Ralls did so spitefully and maliciously, with the intention of forcing appellant to abandon its station facilities at Cedric and establish others at Ralls. That said order is unjust and unreasonable as to appellant for reasons set out in appellant's petition.

The Railroad Commission answered by general demurrer and general exception, and alleged that the appellant was guilty of gross abuse of its discretion in locating its railway station, and that its action was an intentional effort and purpose to promote the financial interest of one locality as against another, and to discriminate against the peo-ple and locality of Ralls in favor of the locality and owners of Cedric, and alleged facts intended to show the reasonableness of said order.

After the answer of the Commission had been filed, the state of Texas, through its Attorney General, filed by permission of the court a plea of intervention, adopting the plea of the Commission and alleged facts intended to show a public necessity for a station at Ralls, and prayed for a mandamus requiring the appellant to put in such spur track, and in the event such relief should not be granted, and it should be held that the Railroad Commission was without authority to require appellant to put in the spur track at Ralls, that it be granted a mandamus or mandatory injunction, requiring appellant to put in a station with all necessary facilities.

After the evidence had all been heard, the court sustained appellant's exception to the state's plea of intervention, to which the state excepted, and rendered judgment against appellant, dissolving the temporary injunction against the Commission theretofore granted.

The case was tried before the court without a jury, and, upon request of appellant, the court filed findings of fact, which we adopt as follows:

"(1) In the early part of the year 1910 the plaintiff railroad company caused a survey to be made of a line of railroad beginning at Crosbyton and extending west. According to this survey and the plats thereof, a station was to be maintained at Crosbyton; another at a place designated as Cedric, 11²/₁₀ miles west of Crosbyton; another at Lorenzo, 18²/₁₀ miles west of Crosbyton; and another at Idalou, 27 miles west of Crosbyton. After the survey of said road and designation of stations as aforesaid, construction work was begun on same, and the railroad began operations on April 10, 1911. A station was first built at Crosbyton, and upon the completion of same early in August, 1911, the plaintiff company began the construction of stock pens, etc., at Cedric, and completed its improvements, including a depot building, by September 25, 1911.

"(2) At the time said railroad was first surveyed and began operations, the surrounding country was sparsely settled, and no persons then lived at the place designated as Cedric nor at the place now occupied by the town of Ralls. The nearest post office and town was a small town known as Emma, located about 3½ miles south of the station of Cedric. At the time the site now known as Cedric was located as a station, and at the time the railroad company's improvements were erected there, it was well and centrally located with reference to the surrounding territory and reasonably convenient for the people to be served by said station. No station agent was maintained at Cedric until February, 1913, since which date the railroad company has maintained a station agent at said point. The railroad facilities at Cedric (such as depot buildings, side tracks, and stock pens) are reasonably adequate to handle the business of the territory adjacent thereto. There has never been any business conducted at Cedric, outside of the business conducted by the railroad company, until recently, when a blacksmith shop was moved to said point and is now being operated there. The

population of Cedric consists of the station agent and his wife, the blacksmith and his family, and possibly two or three other persons.

"(3) Prior to the construction of the plaintiff's line of railway, Mr. Bassett, one of the promoters of said road, and since its organization, an officer thereof, caused it to be understood by the citizens of Emma and the surrounding country that no town would be located by said railroad company between Crosbyton and Lorenzo, but that a switch would be installed in the locality of the point now designated as Cedric, and prior to the building of the town of Ralls no inducements were offered the citizens of Emma or others to build a town at Cedric; the attitude of the persons in control of said railroad company, and those in control of the land immediately surrounding the station of Cedric, being such as to discourage, if not to actually prevent, the building of a town at said point.

"(4) Many persons residing and doing business in the town of Emma, desiring to build a town at some point in the community and on the railroad, made arrangements with the owner of the land, which resulted in a site being surveyed and located for a town at the place now designated as the town of Ralls, which is situated about 1½ miles east of the station of Cedric. In the latter part of July, 1911, a building was moved to the present site of Ralls, and the post office was moved from Emma to said building. From that time on, during the month of August, 1911, and the fall of that year, many persons moved to the town of Ralls, erecting houses or moving houses to said town, and there has been a gradual growth in the population of Ralls down to the present date. The inhabitants now number 300 or more, and considerable business is transacted there. By far the larger part of the freight received at the station of Cedric is destined to the town of Ralls, and much the larger portion of the dead freight shipped out of the station at Cedric either originates in the town of Ralls or is purchased and weighed in the town of Ralls before it is carried to the station at Cedric for shipment. Several car loads of freight are each week received and shipped out from the station of Cedric, the greater portion of which, as above stated, originates at or is destined to the town of Ralls.

"(5) The town of Ralls is connected with the station at Cedric by a public road, which, on account of a depression extending over a portion of it, is at times impassable; a considerable detour over private lands having to be made in order to reach the station. Some of the business houses in the town of Ralls are about two miles distant from the station at Cedric. Freight is carried between the station and the town of Ralls by wagons and drays; seven or eight teams being engaged in this business.

"(6) The necessary expense to the plaintiff railroad company in constructing the improvements as ordered by the Railroad Commission at the town of Ralls will be about the sum of $1,000. The enforcing of said order would also entail some slight delay in the train schedules on the plaintiff's railroad, and also some small incidental expense, by reason of the necessity of stopping their trains to do the additional switching at Ralls, and would also probably cause the railroad company some trouble in preventing passengers from entering and leaving its trains at said point.

"(7) During the year ending June 30, 1913, the earnings of the plaintiff railroad company amounted to $39,905.36. During the same period the expense of operation amounted to $36,-199.52, and the fixed charges were interest, $27,585.50, and taxes, $2,089.02.

"(8) The facts in this case do not show that the enforcement of the order of the Railroad Commission, which is sought to be enjoined in this cause, would be unreasonable or unjust to the plaintiff railroad company."

169 S.W.—66

## Opinion.

[1] The decision in this case involves the construction of article 6715, R. S., which reads as follows:

"All railroads in Texas shall be required to build sidings and spur tracks sufficient to handle the business tendered such railroads, when ordered to do so by the Railroad Commission, as hereinafter provided."

This article is section 1 of the act of March 27, 1903, section 2 of said act is article 6716, R. S., and reads as follows:

"Power is conferred on the Railroad Commission of Texas to require compliance by railroad companies with the provisions of section 1 of this act, under such regulations as said Commission may deem reasonable, and all railroad companies shall be subject to the penalties prescribed by law for failure to comply with the requirements of the Railroad Commission as herein provided."

Article 6672, R. S., provides for punishment by fine of not more than $5,000 for violation of any lawful order of the Railroad Commission.

Appellant insists that the rule with reference to the construction of penal statutes should be applied to article 6715, supra. Statutes which inflict a penalty for their breach, independent of the damages occasioned thereby, are penal in their nature and should be strictly construed. Railway Co. v. State, 100 Tex. 420, 100 S. W. 766; Railway Co. v. Blocker, 48 Tex. Civ. App. 100, 106 S. W. 719; Railway Co. v. Slator, 7 Tex. Civ. App. 344, 26 S. W. 233. But such statutes must not be so strictly construed as to defeat the obvious purpose of the Legislature. Railway Co. v. Voss, 49 Tex. Civ. App. 566, 109 S. W. 985; U. S. v. Wiltberger, 5 Wheat. 76, 5 L. Ed. 42. This rule of construction, as also the one for which appellees contend, viz., that article 6715 is remedial in its nature, and therefore should be liberally construed so as to effect its evident purpose, should be resorted to only when, after applying other rules, there remains a substantial doubt as to the meaning of the statute.

The primary rule of construction is that words, not technical in their nature, should be taken in their ordinary acceptation. Engelking v. Von Wamel, 26 Tex. 471. A departure from this rule is, however, required when the context or other statutes in pari materia show that they were not intended to be so used. When the intention is made manifest, it will not be sacrificed to a literal interpretation of the words used. Russell v. Farquhar, 55 Tex. 355; Witherspoon v. Jernigan, 97 Tex. 98, 76 S. W. 447.

Another rule limiting the ordinary meaning of words is that the Legislature will not be presumed to have included in a general description anything which it could not legally include. Applying this rule, it was held in Railway Co. v. R. R. Commission, 98 Tex. 67, 80 S. W. 1141, that it was not intended, by enacting article 6715, to confer upon the Railroad Commission the power to compel railroads to build a spur track for the accom-

modation of an individual, but that the word "business," in said article, means public business.

The language used in article 6715 is broad enough to include switches and spur tracks at any place, unless they are limited by the word "tendered." Appellant insists that business cannot be "tendered" to a railroad in the sense in which that term is ordinarily understood, except at a place where it has facilities for transacting its business, viz., at its depots or at its sidings or spurs theretofore established by it, and that this construction is sustained by the decision in R. R. Commission v. Railway Co., 102 Tex. 393, 117 S. W. 794. That decision is in effect that inasmuch as article 6552 (4494) R. S., requires railroads to furnish sufficient accommodations for the transportation of freight and passengers at their places of starting, and as Texhoma was one of the appellee's starting places by virtue of its being on the state line, and inasmuch as article 6654 (4562) makes it the duty of railroads to maintain adequate depots at their several stations, and as article 6589 (4519) makes it the duty of railroads to erect suitable buildings, etc., at each of their stations, the use of the word "accommodations" should be construed to require the railway company to erect a depot building and maintain a station at Texhoma, though the company received and discharged freight and passengers at suitable buildings 870 feet distant in Oklahoma. We do not think that this decision is in point in the instant case. Appellant's contention is that this decision holds that railroads are required to receive freight and passengers at only three points, to wit: (1) Places of starting; (2) junctions of other roads; and (3) places established for receiving and discharging passengers and freight. True, these are the only places mentioned in article 6552 which was under consideration in the foregoing case, but it does not follow that other articles of the statute may not require freight and passengers to be received at other points when so ordered by the Railroad Commission.

We do not think that the words "business tendered," as used in article 6715, should be given the restricted meaning contended for by appellant, but that they mean public business existing at points on railroads which would be given to the company at such points if proper facilities were furnished. Also that they refer to the capacity of the tracks when built, rather than to the place where required to be built.

The words "sidings and spur tracks" are not usually applied to side tracks at depots, but to the tracks other than the main lines at places where there are no depots or agents to receive or forward freight or passengers. Such places are often denominated sidings or spurs, in contradistinction to stations or depots.

It must always be presumed that the Legislature had some purpose in view in enacting a statute, and that this purpose was to remedy an existing evil by the amendment of an existing statute, so as to limit or extend, as the case may be, an existing law or to supply a defect by passing a new law. Article 6715 was enacted in March, 1903 (Acts 28th Leg. c. 68). The caption is:

"An act requiring railroad companies to construct sidings and spur tracks, and giving the Railroad Commission power to require construction of same."

Under the construction given to article 6552 by our Supreme Court in Railway Co. v. R. R. Com., 98 Tex. 67, 80 S. W. 1141, it cannot be doubted that it was the duty of railroads to construct all necessary side tracks, switches, and spurs at their stations. This article had been the law in this state since 1853. See Paschal's Dig. art. 4893; Gammel's Texas Laws, vol. 3, p. 1340. If it was the purpose of the Legislature to specifically empower the Railroad Commission to enforce this law as to the places mentioned in article 6552, viz., starting places, junctions, and established stations, it would seem that the obvious thing to have done would have been to have amended this article by adding a clause conferring such authority. This is just what the same Legislature that passed the act of March, 1903, did do in May, 1903. See Acts Called Session, p. 21. If, on the other hand, the only thing intended by the Legislature in passing the act of March, 1903, was to confer upon the Commission power to enforce the provisions of article 6552, then the act of May, 1903 was useless, and the Legislature of 1911 did a useless thing in bringing article 6715 forward in the Revised Statutes.

Again, it may well be supposed that if the Legislature meant that the provisions of the act of March, 1903, should apply only to the provisions of article 6552, and make the word "accommodations," as used therein, more specific by adding the words "sidings and spur tracks," some reference would have been made to that article. No such reference is made in either the caption or the body of the act. We think that the Legislature thought that the laws then on the statute books required the railroads to build sidings and spur tracks only at their stations, and that this was inadequate to the public needs, and for that reason enacted article 6715. We are confirmed in this opinion by the declaration in the emergency clause of the act that:

"There being no adequate law now in force providing that railroads in Texas shall build sidings and spur tracks," etc.

We think that the Legislature intended, by enacting article 6715, to require sidings and spur tracks to be built at places other than their stations, when ordered so to do by the Railroad Commission.

[2] Under the common law, which is expressly declared to be in force in this state as to carriers (article 707, R. S.), it is the duty of railroads to furnish reasonable facilities for the transaction of public business.

Our statutes in reference to building depots, keeping them lighted and warmed, etc., are but legislative declarations of what is deemed necessary for railroads to do in order to discharge their common-law liabilities.

[3] It cannot be doubted that the Legislature has the power to leave it to the discretion of the Railroad Commission as to the manner in which such duties shall be performed, including the time when, and place where, specific facilities shall be furnished; a precaution against the abuse of such discretion being provided by permitting an appeal to the courts.

It is the contention of appellant that, if article 6715 be so construed as to authorize the Railroad Commission to require appellant to put in a spur track at Ralls, such article is in violation of the Constitution of the United States and of this state in that the effect of such order is to take appellant's property without due process of law.

[4] Want of due process of law may arise either from the fact that the law attempted to be enforced is void, and is therefore no law, or that the forms of the law have not been observed, for which reason the party against whom the law is attempted to be enforced has not had his day in court. The latter objection is not urged in this case. The appellant had a hearing upon the merits before the Commission; it had a fair trial in the district court and is now prosecuting its appeal in this court. Such being the facts, this case is in a different class from Railway Co. v. Minn., 134 U. S. 418, 10 Sup. Ct. 462, 702, 33 L. Ed. 980.

[5] From the standpoint of public service, it cannot be said that the order requiring a spur track to be put in at Ralls is unreasonable. The evidence shows that Ralls is a rapidly growing town, and though but two years old at the time of the trial herein, with no depot, spur track, or siding, it had more than 300 inhabitants, and 28 business establishments, including a bank. It had a gin at which between 1,500 and 1,600 bales of cotton had been ginned during the season of 1913, and the ginning season had not closed; a two-story brick schoolhouse, erected at a cost of $17,000; a Masonic hall; a Woodman hall; a church; a post office, which supplies by star route the county seat of an adjoining county and three other post offices. It has a trade territory extending from 15 to 18 miles in every direction, which is being rapidly settled up by farmers, and which produces cotton, corn, wheat, oats, Kaffir corn, milo maize, and broom corn. These facts show a public necessity for shipping facilities at Ralls, at least to the extent of a spur track, as ordered by the Commission.

Appellant's reply to this is that Cedric is in the same trade territory as Ralls, and has sufficient shipping facilities to accommodate the business. This is true, but the business does not come to Cedric. There are no business establishments there, except a blacksmith shop, recently induced by the Cedric Townsite Company to remove from Ralls, no gin, no cotton buyers or grain dealers, no sellers of merchandise or buyers of produce, no post office, no church, no schoolhouse, no public halls, no inhabitants, except the station agent and blacksmith and their families, and perhaps two others. If it be said that the people who are at Ralls could have settled at Cedric, a sufficient answer is they did not do so, and the railroad company has no right to punish them for not so doing. But they could not have done so. All of the lots in Cedric are owned by the Cedric Townsite Company. The stockholders in the Cedric Townsite Company are practically the same as the stockholders in the C. B. Livestock Company. The stockholders in the C. B. Livestock Company are practically the same as the stockholders in the railroad company, appellant herein. The facts in evidence make it apparent that each of these corporations was opposed to a town's being built at any point on the road east of Lorenzo, for the reason that the C. B. Livestock Company owned a large body of unimproved land through which the road was constructed, and of which Lorenzo was nearer the center. Their lands extended only about 1¼ miles east of Cedric. Lorenzo is 6.9 miles west. The appellant's road was built 3½ miles north of the town of Emma, which was the county seat of Crosby county. The county seat has since been moved to Crosbyton, the starting point of appellant's road. The people of Emma desired to settle at a point on the railroad in their vicinity. Ralls was the nearest point where they could obtain title to land, and consequently the town of Emma was practically moved to Ralls. Is the order of the Commission unjust and unreasonable to the appellant, viewed from a financial standpoint?

Railroads are, as declared by the Constitution of this state (article 10, § 2), public highways. They perform a function, and governmental powers are delegated to them from motives of public policy. It is presumed that the government will do no wrong, and therefore it is presumed, when it invites the investment of private capital in public service corporations, that it will not require the business to be conducted at a loss to the investors.

[6] It does not follow, however, that, because a particular public service would prove unremunerative to a railway company, the state may not lawfully require it to be performed, especially when such loss would be only temporary. Under some circumstances, the rights of the companies and bondholders are subordinate to those of the public. See authorities cited in the brief of Attorney General Culberson in Reagan v. Loan & Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1019. The business at Cedric,

about 95 per cent. of which comes from. the town of Ralls, barely meets the expense of maintaining that station. A spur track at Ralls would involve a slight increase in expenses. But the necessity for a spur track at Ralls is such as to require that the same be built and operated, though the appellant, under conditions as they existed at the time of the trial, will suffer a slight loss thereby. But it may fairly be inferred that such condition will not long continue. The population and production of the trade territory of Ralls is increasing, as is also the population and business of the town.

Appellant alleges that it is already operating its road at loss, and therefore should not be required to incur any additional expense. The total earnings of appellant's railroad for the year ending June 30, 1913, were $39,905.36; its total expenses for the same period, including $27,585.50 interest, were $65,874.14. But this showing of a loss in the operation of the road does not necessarily imply a loss to the stockholders by reason of their having built and operated said road. As stated, the stockholders of the railroad company are also the stockholders of the C. B. Livestock Company, who incorporated and built the road for the evident purpose of enhancing their lands. There is nothing in the record to indicate that their expectations in this regard have not been realized, and that the railroad has not in fact proven a profitable investment to them. Nor are we justified in inferring that the income of the railroad corporation itself will not in the near future exceed its operating expenses. The burden being upon appellant to show by clear and satisfactory evidence that the order of the Commission is unreasonable and unjust as to it, no presumptions should be indulged against such order. As to the fact that the spur track would cost $1,000, that evidently did not influence appellant in its refusal to comply with the order. The citizens of Ralls offered, before this suit was brought, to bear all the expense of building the track, and renewed their offer in open court upon the trial hereof.

[7] Appellant assigns error upon the admission of testimony to the effect that Julian W. Bassett stated to the citizens of Emma, prior to the location of the town of Ralls, that there would be no depot and no town between Crosbyton and Lorenzo, and that only a switch would be built in the vicinity of where Cedric and Ralls are now located; that the Cedric Townsite Company refused to sell any lot in Cedric; that Ralls was the nearest point to Emma on the railroad where lots could be purchased; that the town of Ralls was laid out before a depot was built at Cedric; that Ralls would not have been made a town site if lots could have been bought at Cedric; and that Bassett said he would spend a million dollars to destroy Ralls. Bassett was the general

manager of the railroad company, of the livestock company, and of the townsite company. The objection to this testimony was that it was irrelevant and immaterial. Appellant alleged that the people of Ralls were actuated by spite in building that town. The testimony was relevant to this issue. If this issue was immaterial, it was the appellant that injected it into the case. If the admission of this testimony was error, it was harmless, inasmuch as the proper judgment was rendered, regardless of the motive of the parties hereto.

The state has filed cross-assignments as to the action of the court in sustaining exceptions to its plea of intervention. We are not certain that the state was a proper party to this suit in any event. Upon this point, however, we do not pass.

[8] It is the contention of the state that it is the common-law duty of appellant to establish reasonable shipping facilities at Ralls, and that the allegations of its plea of intervention show that a spur track at that place is such reasonable facility, and that the court, at the suit of the state, may compel the appellant by mandamus to build such track. If it be conceded that this is a correct statement of the common law, and that the common law, as it is applicable to railroads, has been adopted in this state, still we think that where the Legislature has adopted a specific method of ascertaining whether or not a particular thing shall be required of a railroad in order to discharge its common-law duties as a common carrier, and has adopted a particular method of enforcing such duty, such method of ascertaining the fact and of enforcing the duty supersedes the common law on the subject. The common-law method of ascertaining the fact involved in this case, viz., the necessity for a spur track at Ralls, was by a trial in court upon petition of the state for mandamus. The method adopted by our statute is an investigation by the Railroad Commission. The method of enforcing the judgment of the court, should mandamus be granted, is by fine and commitment for contempt; the method of enforcing the order of the Commission is by suit for penalties for disobeying such order. The court has no jurisdiction to enforce the statute until the matter has been first passed upon by the Commission, and then it only determines whether or not the order of the Commission is unjust and unreasonable as to the railway company complaining of the same. Such being our view of the law, we do not think the trial court erred in sustaining the exceptions to the state's plea of intervention, in so far as it related to the spur track.

Unless the Railroad Commission had authority to require the appellant to build and maintain a depot at Ralls, which point is not involved in this case, the right of the state, if any it had, to intervene for the purpose of requiring the appellant to build and

maintain a depot at Ralls would not be taken away by statute. But we are not called upon to pass upon this issue, inasmuch as the state's prayer for a writ of mandamus to require the appellant to build a depot at Ralls was only in the alternative, in the event that it should be held that the Railroad Commission was without power to require the appellant to put in a spur track at Ralls.

For the reasons stated herein, the judgment of the trial court is affirmed.

Affirmed.