NORTH TEXAS TRANSFER & WAREHOUSE CO. v. STATE. (No. 5403.)

(Court of Civil Appeals of Texas. Austin. July 1, 1914. Rehearing Denied Oct. 28, 1914.)

TAXATION (§ 142*)—GROSS EARNINGS—INTERURBAN RAILROADS—EXPRESS COMPANIES.

Rev. St. 1911, art. 7369, provides that corporations doing an express business by "railroad" or water in the state shall annually report to the comptroller their gross receipts and pay to the state treasurer an occupation tax equal to 2½ per cent. of such gross receipts. *Held*, that the word "railroad," as used in such act, is not limited to commercial steam railroads, but includes interurban electric railroads.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 270; Dec. Dig. § 142.*

For other definitions, see Words and Phrases, vol. 7, pp. 5899–5908; vol. 8, pp. 7777, 7778.]

Appeal from District Court, Travis County; George Calhoun, Judge.

Action by the State of Texas against the North Texas Transfer & Warehouse Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Crane & Crane, of Dallas, for appellant. B. F. Looney, Atty. Gen., and Luther Nickels, Asst. Atty. Gen., for the State.

Findings of Fact.

JENKINS, J. The following statement of the nature of this case, and the material facts hereof, is taken from appellant's brief and adopted by us:

"The state of Texas, hereinafter denominated appellee, by its Attorney General, brought its suit in the district court of Travis county, Tex., against the North Texas Transfer & Warehouse Company, hereinafter styled appellant, alleging in substance that appellant was a corporation organized under the laws of the state of Texas, and that it had been continuously since July 16, 1907, engaged in doing an express business by railroad in the state of Texas, and that by reason of the premises it was its duty on or before the 1st day of March of each year after said date to make a report to the comptroller of public accounts under oath, showing the amount of gross receipts on charges of freight within this state collected by or on account of said express business during the 12 months next preceding the report, and that it was its duty to pay to the treasurer of the state of Texas an occupation tax of 2½ per cent. of gross receipts, as shown by said report. It alleged that it had failed to do this. The gross receipts charged to have been collected by appellant during the respective years were stated as follows, to wit:.

For the year next preceding March
  1, 1908...................... $ 13,007 20
For the year next preceding March
  1, 1909...................... 34,369 05
For the year next preceding March
  1, 1910...................... 50,169 44
For the year next preceding March
  1, 1911...................... 63,002 10
For the year next preceding March
  1, 1912...................... 66,166 06
For the year next preceding March
  1, 1913...................... 103,253 81

"It was then charged that under the terms and provisions of article 7369, R. S. 1911, same being section 1, c. 18, of the Acts of the Special Session of the Thirtieth Legislature, defendant became liable and bound to the state of Texas to pay a tax of 2½ per cent. of said gross receipts for each of said years, amounting for each year to the following sums:

For the year next preceding March
  1, 1908........................ $ 325 18
For the year next preceding March
  1, 1909........................ 859 73
For the year next preceding March
  1, 1910........................ 1,254 24
For the year next preceding March
  1, 1911........................ 1,575 05
For the year next preceding March
  1, 1912........................ 1,654 15
For the year next preceding March
  1, 1913........................ 2,581 44
                       $8,249 79

"It was alleged that it had failed to do this, and it therefore prayed for a judgment for the total amount of taxes, with 10 per cent. penalties thereon, amounting in the aggregate to $9,074.76.

"The appellant answered, in which it denied that it had ever been doing an express business on a railroad in the state of Texas, as alleged by plaintiff. It admitted that it had been doing an express business on interurban electric railways; that the interurban railways upon which it has done business from time to time are the ones connecting Dallas, Tex., and Ft. Worth, Tex., Galveston, Tex., and Houston, Tex., Dallas, Tex., and Sherman and Denison, Tex., and latterly the one connecting Dallas, Tex., and Cleburne, Tex., by way of Ft. Worth, Tex.; and that on these lines it did an express business, but it did no express business on any other lines, and did no express business on any steam railway.

"It further alleged that the interurban electric railways upon which it did business were not chartered under the provisions of law authorizing the chartering of railroad corporations, but were chartered under statutes recently passed authorizing the creation of interurban electric railways; that the provisions of the laws controlling such matters are wholly dissimilar. It denied that it was its duty to make any report to the state or pay 2½ per cent. gross receipts tax for any of the years named. It denied that it had, within the meaning of the law, willfully failed and refused to make reports for any of the years named in the third paragraph of plaintiff's petition, because it averred that it was advised by legal counsel, and is now informed and believes, that it was not required by law to make report to the comptroller of public accounts as aforesaid, and that no report was ever demanded of it by the comptroller of public accounts, or by any officer of the state of Texas, until within the year 1913, and that it was then advised and is still advised that it is not its duty under the statute to make such reports; that the terms and provisions of the

statute invoked by the plaintiff relate only to express companies doing business by steam railroads and not by electric railways or interurbans. It admitted that it had collected the amounts of gross receipts on its express business transacted on interurban electric railways, as set out in plaintiff's petition.

"The trial was had, a jury being waived, and resulted in a judgment against defendant company, appellant herein, for the sum of $8,249.79, with 10 per cent. added thereto, or $824.97, as penalties, making a total of $9,074.76. A motion for a new trial was filed within two days, and thereafter amended with leave of the court. This was on the 24th of April, 1914, overruled. Appellant gave notice of appeal to this court, and thereafter, on the 24th of April, 1914, filed its assignments of error, and on the 29th day of April, 1914, filed its appeal bond."

### Opinion.

The law of this case is determined by the proper construction of article 7369, R. S., which reads as follows:

"Express Companies.—Each and every individual, company, corporation or association doing an express business, by railroad or water, in this state, shall, on or before the first day of March of each year, make a report to the comptroller of public accounts under oath of the individual or of the president, treasurer or superintendent of such company, corporation or association, showing the amount of gross receipts from charges and freights within this state paid to or collected by such individual, company, corporation or association on account of money, goods, merchandise or other character of freight carried within this state during the twelve months next preceding. Said individuals, companies, corporations or associations, at the time of making said report, shall pay to the treasurer of the state of Texas an occupation tax for the year beginning on said date equal to two and one-half per cent. of said gross receipts, as shown by said report."

It is the contention of appellant that the word "railroad," as used in said article, does not include interurban railroads. In construing a statute, the thing to be ascertained is: What did the Legislature mean by the language used? For a discussion of the rules for the construction of statutes, see Crosbyton-Southplains Railroad Co. v. Railroad Commission, 169 S. W. 1038, decided at the present term of this court; also article 5502, and "Final Title," section 3, R. S. There are decisions in this state and elsewhere which hold that the word "railroad," as used in certain statutes, did not include street railroads. Scott v. Bank, 97 Tex. 58, 75 S. W. 7, 104 Am. St. Rep. 835; Riley v. Railway Co., 13 Tex. Civ. App. 247, 35 S. W. 826; Sams v. Railway Co., 174 Mo. 53, 73 S. W. 686, 61 L. R. A. 478; Railway Co. v. King (Tenn. Ch. App.) 59 S. W. 805; Electric Ry. Co. v. Simon, 20 Or. 60, 25 Pac. 147, 10 L. R. A. 251, 23 Am. St. Rep. 86. There are decisions in other jurisdictions to the contrary. The Supreme Court of the United States upon this point said:

"The statute in terms applies to carriers engaged in the transportation of passengers or property by railroad. But in 1887 that word had no fixed and accurate meaning, for there was then, as now, a conflict in the decisions of the state courts as to whether street railroads were embraced within the provisions of a statute giving rights or imposing burdens on railroads. The appellant cites decisions from 12 states, holding that in a statute the word 'railroad' does not mean 'street railroad.' The defense cite decisions to the contrary from an equal number of states. * * * This conflict is not so great as at first blush would appear." O. & C. B. St. R. Co. v. Commerce Com., 230 U. S. 332, 33 Sup. Ct. 891, 57 L. Ed. 1501, 46 L. R. A. (N. S.) 385.

The court then explains that most of these decisions rest upon the context of the particular statute under consideration. As to those decisions wherein it is held that the word "railroad" does not include street railway, in order to determine what weight, if any, should be given them in support of the proposition that the word "railroad," when used without any qualifying word, means only those railroads known as steam or commercial railroads, we must look to the subject-matter of the statute under discussion in each case, and the reasons given by the courts for their decisions.

In Scott v. Bank, supra, the issue was as to whether section 5, art. 10, of the Constitution of Texas, which forbids the consolidation of competing or parallel lines of railroads, applied to street railways. It was held that it did not. The consolidation of street railways was clearly not within the mischief sought to be prevented by the Constitution, and the control of street railways was specifically intrusted to municipal authorities by section 7 of the same article of the Constitution.

In Riley v. Railway Co., the Honorable Court of Civil Appeals for the First District supposed that the Legislature did not intend to include street railroad employés in the benefits of the fellow servant act, for the reason that the danger to such employés was not sufficiently great to call for such legislation. The Legislature promptly, at its next session, declared that street railway employés should be included. R. S. art. 6642. The Supreme Court of Missouri, referring to the case of Sams v. Railway Co., supra, said that it was not intended to hold in that case that the word "railroad" excluded street railroads; that it might or might not do so, according to the connection in which the word was used. Biggs v. Railway Co., 120 Mo. App. 335, 96 S. W. 708.

In Electric Co. v. Simon, supra, the decision that the statute providing for condemnation proceedings for railroads did not apply to street railways was based upon the wording of the statute, and not upon the meaning of the word "railroad." One reason for holding that statutes conferring the right of eminent domain on railroads were not intended to apply to street railways is that such railroads run upon streets which they do not own, permission to use which must be obtained from the municipal authorities, and therefore they are not presumed to need the right to condemn land for their right of ways. Another reason is that the exercise

of the right of eminent domain is taking property without the owner's consent, for which reason "it is * * * a fundamental rule that all statutes in regard to eminent domain are to be given a very strict construction." O'Neal v. Sherman, 77 Tex. 184, 14 S. W. 31, 19 Am. St. Rep. 743.

But whether the word "railroad" ordinarily does or does not include street railroads is not determinative of whether it includes interurban railroads. There are no such material points of difference between interurban railways and what, for want of a better name, we designate steam or commercial railroads, as there are between such railroads and street railroads. Appellant quotes from Scott v. Bank, supra, as follows:

"Ordinarily, when we speak of a railroad, we mean a railroad over which freight and passengers are transported from one town or city to another."

This description is applicable to the interurban railroads over which appellant does business. Besides, in that case the matter under consideration was the construction of the constitutional provision forbidding the consolidation of parallel and competing lines of railroad. The purpose of this provision would suggest that it was not intended to apply to street railroads; and this is further indicated by section 7 of the same article of the Constitution. As was said in Malott v. Railway Co., supra:

"These electrical roads, in the speed of their trains, in the distances traveled, and in their capabilities for transportation, are well within the field of public utilities hitherto occupied by the steam railroads alone."

Statutes in which the word "railroads" is used without any qualifying prefix or suffix have been held to apply to interurban railroads in the following, among other, cases: The Federal Employé Act; McAdow v. Railway Co. (Mo. App.) 164 S. W. 192. Requiring engineers and conductors to stop their trains at railroad crossings. Railway Co. v. Jacobs, 92 Ala. 187, 9 South. 320, 12 L. R. A. 830. With reference to standing on the platforms of railroad cars. Railway Co. v. Lohe, 68 Ohio St. 101, 67 N. E. 161, 67 L. R. A. 637. With reference to the right of eminent domain. Clinton v. Railway Co., 37 Iowa, 61. With reference to fencing right of way. Riggs v. Railway Co., 120 Mo. App. 335, 96 S. W. 707. With reference to requiring a city franchise. Diebold v. Railway Co., 117 Ky. 146, 77 S. W. 674, 63 L. R. A. 637, 111 Am. St. Rep. 230, 4 Ann. Cas. 445. With reference to crossing tracks of other railroads. Railway Co. v. St. Ry. Co., 96 Ky. 355, 26 S. W. 181.

"There has been a general concurrence in embracing all railroads in two classes: (1) Commercial railroads; and (2) street railroads. Commercial railroads embrace all railroads for general freight and passenger traffic between one town and another, or between one place and another. * * * Street railroads embrace all such as are constructed and operated in the public streets for the purpose of carrying passengers with their ordinary hand baggage from one point to another on a street." Lewis on Eminent Domain, vol. 1, § 110a.

We speak of steam railroads, commercial railroads, standard gauge, narrow gauge, electric railroads, and elevated railroads, but "railroad" is a generic term, and embraces railroads of all characters, unless the context indicates that it is used in a limited sense. The character of the motive power used is not a determinative factor. Philadelphia v. Traction Co., 206 Pa. 35, 55 Atl. 762; Bank v. Railway Co., 13 Allen (Mass.) 105; Railway Co. v. St. Ry. Co.; and Clinton v. Railway Co., supra.

Appellant has called our attention to the fact that, though our present statute in reference to condemning right of way for railroads was passed in 1876, the Legislature in 1901 passed an act authorizing the condemnation of right of way by the North Texas Traction Company from Ft. Worth to Dallas, and in the emergency clause declared that there was no existing law authorizing interurban railways to condemn right of ways (Acts 1901, p. 120), and also that the Legislature in 1907 (Acts 30th Leg. c. 15) passed an act conferring the right of eminent domain on electric interurban railway corporations. As to the first act above referred to, it was true that the North Texas Traction Company had no authority to condemn right of way through Tarrant and Dallas counties, for the reason that it had no authority to build a railroad outside of the corporation of Ft. Worth. The latter act conferred upon electric interurban railway companies rights not theretofore given to any railroad company. The right of eminent domain might have been included in the act out of abundance of caution, in view of the strict construction given to statutes in references to eminent domain. The act was passed to encourage the building of suburban roads, and it is well known that capital is very cautious, and it was perhaps thought advisable to remove all doubt.

Our attention has also been called to the fact that section 1 of the act (Acts 30th Leg., 1st called Sess., c. 18) under consideration used the word "railroads," and in section 10 mention is made of interurban railroads. These sections relate to different matters; the first to the taxation of express companies, the second to the taxation, not of railroads in general, but of a particular kind of railroads, which it was necessary to describe in order to differentiate them from other railroads not intended to be included. If we had a statute in one section levying an occupation tax on all persons selling cigars in hotels, and in another section upon hotels using elevators, it could not be inferred that the Legislature did not intend to include, in the section referring to cigar dealers, hotels using elevators, especially so if hotels not using elevators were taxed under another law, as is the case as to all railroads not mentioned in section 10. The meaning of a

word used in a statute often depends upon the purpose for which it was passed. Here the declared purpose is to levy an occupation tax. The policy of our law is to equalize the burdens of taxation. The statute explicitly declares that all express companies doing business by railroads are to be taxed in proportion to the business done. The business done on interurban railroads is of the same character as that done on other railroads. If it is less in value, the tax is proportionally less in amount. Such business is rapidly increasing, as appears from the record in this case. If appellant is not taxed under this act, it escapes taxation altogether. Such ought not to be presumed to have been the intention of the Legislature, in the absence of language indicating such purpose.

Believing that upon both reason and authority article 7369 includes express business done upon interurban railroads, we affirm the judgment of the trial court herein.

Affirmed.