This action was begun by the Railway Company to restrain by injunction the Railroad Commission from enforcing an order made by it requiring the company to construct at Texhoma, Texas, "a station on its line of railway in Texas, and its terminus, an adequate and sufficient passenger and freight depot building for the proper accommodation, as required by law, of the business of said station."
The Railway Company contends, in substance (1), that the Commission was without power to require it to place a station at any place other than those at which it had established them, and (2) that if the power existed with reference to any place or to any condition of facts, the order in question requiring the station at Texhoma was an unreasonable and unjust exercise of it when applied to the conditions at that place. The District Court and the Court of Civil Appeals sustained the latter contention.
The terms of the order made by the Commission, which we have quoted, indicate that it was based, not on an asserted power to determine the locations of stations generally, but upon the opinion that the law requires a station at Texhoma. As we concur in that view, it will be unnecessary to enter into a discussion of the question whether or not that body is clothed by the statutes with the power generally to require stations at points where the law has not required them and where railroad companies have not established them. We therefore proceed to the examination of the question indicated, whether or not the laws of this State have required stations, with the proper houses and their appurtenances, at such places as Texhoma is shown to be.
From the findings of the trial judge adopted by the Court of Civil Appeals and from evidence in the record which is uncontradicted, it appears that Texhoma is a town partly in Texas and partly in Oklahoma, its population being four hundred or five hundred, of which about one hundred and fifty are in Texas. The track of the defendant in error connects at the State line with that of the Chicago, Rock Island Pacific Railway Company, a foreign corporation, *Page 395 
whose road runs through Oklahoma. The same trains are used by the two companies, their possession and control changing from one to the other as they cross the State line. They do not stop in Texas at Texhoma, but cross the line from and into Oklahoma, stopping for freight and passengers at a station in that State, belonging to the Chicago, Rock Island and Pacific Railway Company, which is situated about 870 feet from the State line. There is no municipal organization or postoffice in what is called Texhoma in Texas. The stopping place on defendant in error's road in Texas nearest to Texhoma is Stevens, distant 9 59-100 miles. At this point there is only a siding and a section house occupied by the section men. Passengers may take passage and freight may be shipped to and from this place, but no station agent is kept there and shipments of freight must be arranged for at other stations. The earnings of this company at Stevens amount to only $500 or $600 a year, while those at Texhoma for freight amounted, for the year ending August 1, 1907, to $20,360.51, and for the ten months preceding May 1, 1908, for freight and passengers, to $21,478.42. The earnings at the station for Stratford, the county seat, were not much greater. The average distance between stations established by this company on its road in Texas is slightly more than ten miles. The cost of establishing a station with side tracks and appurtenances would be $7000 to $7500.
The statutory provisions upon which we think the question last stated should be decided in the affirmative are articles 4494, as amended in 1903 (Special Session, p. 21); Article 4519; Subdivision 12 of article 4562, and subdivision 1 of article 4579.
"Art. 4494. Every such corporation shall start and run their cars for the transportation of passengers and property at regular times, to be fixed by public notice, and shall furnish sufficient accommodations for the transportation of all such passengers and property as shall within a reasonable time previous thereto offer or be offered for transportation at the place of starting, and the junction of other railroads, and at sidings and stopping places established for receiving and discharging way passengers and freights, and shall take, transport and discharge such passengers and property at, from and to such places on the due payment of the tolls, freight or fare legally authorized therefor."
"Art. 4519. Each and every railroad company is hereby required to erect at each and every depot, station or place established by such company for the reception and delivery of freight, suitable buildings or inclosures to protect produce, goods, wares and merchandise and freight of every description from damage by exposure to weather, stock or otherwise, in default of which such railroad company shall be liable to the owner of such produce, goods, wares or merchandise for the amount of damages or loss sustained by reason of such improper exposure, together with all costs and expenses of recovering the same, including necessary attorney's fees."
"Art. 4562, subd. 12. It shall be the duty of each and every railway subject to this chapter to provide and maintain adequate, comfortable and clean depots and depot buildings at its several stations *Page 396 
for the accommodation of passengers, and said depot building shall be kept well lighted and warmed for the comfort and accommodation of the traveling public; and all such roads shall keep and maintain adequate and suitable freight depots and buildings for the receiving, handling, storing and delivering of all freights handled by such roads; provided, that this shall not be construed as repealing any existing laws on the subject."
"Art. 4579, subd. 1. It shall be the duty of the Commission to investigate all complaints against railroad companies subject hereto, and to enforce all laws of this State in reference to railroads," etc.
From these it appears that the Railroad Commission is empowered and required to see to the performance of the duties therein imposed upon railroad companies and, if that which the defendant in error has been directed to do is also required by these statutory provisions, no question can remain as to the power of the Commission to exact obedience.
It will be seen that article 4494 requires a number of things to be done by railroad companies, and one requirement is in no wise weakened by the presence of others. Hence, we can not agree with counsel for defendant in error in their contention that its purpose was merely to require the regular running of trains, with notice of the times thereof, so as to furnish sufficient train service for the transportation of passengers and property. It does require all that, but it also fixes, as the places at which passengers and property are to be received, (1) starting places, (2) junctions, and (3) sidings and stopping places established for receiving and discharging way passengers and freights. Nor can we agree that this has reference only to such places as the companies may have designated or established as their stations. The statute itself names and fixes starting places and junctions as points at which passengers and property must be received for transportation, and, in addition thereto, the points established by the companies for way passengers and freights. We see no room whatever for the construction contended for.
It is true that this article does not say what the "sufficient accommodations" are to be. If it were the only provision, the case of The People v. The New York, Lake Erie Western Ry. Co.,104 N.Y. 58, would be authority for the proposition that it would not specifically impose the duty to construct station houses in such way as to authorize the enforcement of it by mandamus. That decision was the result of omissions in the laws of New York which, as will be shown, have been supplied in those of this State. The court construed a statute of that State of which article 4494, as originally enacted, seems to be a literal copy. The court conceded that this statute absolutely required some things and forbade others, but concluded that it did notrequire the construction of station houses. It may well be questioned if that was not too narrow a view; but, whether so or not, it can not control this case. The court did not intimate that "places of starting" were not made points at which passengers and property must be received for transportation, that question not being involved in the case. The place in question there was an intermediate one at which the company did receive for transportation, and the only *Page 397 
question was whether or not the terms of the statute so required the building of houses as to warrant the enforcement of the duty by mandamus. In harmony with all that is there said, it may be held, as indeed the statute plainly requires, that the "starting places" are made points for receiving passengers and property for transportation; and, when that is ascertained, the omission which the New York court regarded as fatal to the case before it in the statutes of that State is supplied by our articles 4519 and 4562. Article 4519 imposes the duty there defined with reference to "every depot, station, or place established by such company for the reception and delivery of freight." If the phrase, "or place established by such company? were held to qualify the words "depot" and "station," as is assumed by counsel for defendant in error, but which is far from clear when it is remembered that this article is a part of the same statute with article 4494, that would not prevent the application of this provision to "starting places," for, by force of the last named article, the mere construction of a road with such points establishes them for the reception and delivery of freight and brings them within the language of article 4519. It is inconceivable that the Legislature would provide the protection required at places only which the companies themselves have expressly designated, and withhold it from those at which such companies must also, by force of the same statute, receive and deliver property. Article 4562 makes like provision for the accommodation of both passengers and freight "at its several stations." "Stations," as here meant, are the places at which passengers and property are received for transportation, or delivered after transportation, and among them are included those places to which that character is given by article 4494. We really can see little room for contention about the meaning and purpose of these various provisions.
It follows, from what we have said, that if Texhoma was a starting place it was the duty of the Railroad Company to establish a station there with such accommodations as are specified in these provisions. We do not mean to be understood as holding that the mere fact that the rails stopped at the State line makes the point of contact one at which a station must be maintained. The words used in article 4494 must be understood to mean what they meant when first adopted into our legislation. They were so employed at a time when the chartering of railroad companies by private Acts of the Legislature was just beginning in this State and in other parts of the country. The charter usually authorized the construction of the roads between points named as their termini, and these were referred to as places of starting. The thought was not in the legislative mind that a "place of starting" would be in an unbroken forest, a wild and unsettled prairie, a river swamp, or the middle of a stream, forming a boundary of the State. The roads were to run from town to town and these were their termini, their "places of starting." The State line is, in law and in fact, one terminus of the line of a railroad intersecting it constructed by a Texas corporation because its powers cease at that line; but if there is no "place" there, such as is meant by the language of article 4494, the mere ending of the track does not bring *Page 398 
into existence the duty defined in these statutes. To hold that it does would wrench the law from its obvious meaning and purpose and carry it to absurd extremes. To avoid this and at the same time accomplish the good aimed at will not be found very difficult in practice if the true intent of the statute is kept in mind.
From the facts stated we think it plainly appears that Texhoma is such a place as the statute contemplates. That the town is one at which passengers and freight should be received and discharged is confessed by the action of both railroads in establishing a station there. This further appears from the distance between it and the other station in Texas nearest to it, if Stevens be considered a station, such distance being only slightly less than the average distance between the stations in Texas on defendant in error's road. It is further indicated by the fact that Texhoma, in population, in shipments, in the company's earnings therefrom and in the probability of growth and development in itself and in the country around it, is about equal in importance to other points at which the defendant in error has established stations. In fact there is no contention that its importance is not sufficient to entitle it to such provision if it had none. Regarding the place as one at which it is proper to have station facilities, the defendant in error asserts that those facilities are supplied by the station of a foreign company situated in another State. Whatever might be the weight that ought to be given to such a contention were the question only that which the courts below assumed it to be and which was involved in the case relied on, State v. Minneapolis St. L. Railway, 79 N.W. 510, viz.: whether or not the Railroad Commission, in exercising a judgment and discretion of its own in determining the locations of stations, had acted unreasonably and unjustly, it furnishes no reason for the failure to do that which the law itself requires. The statutes which we have quoted deal with Texas railroads and impose duties to be performed in Texas. The places at which stations are to be established are to be in Texas, and not elsewhere, and it follows that this company does not meet this statutory requirement by using the station of another company in another State. The Railroad Commission having merely followed the statute discussed in making the order in question, the validity of its action must depend upon the validity of the statute, and not upon the powers of the Commission outside that statute. There can, we think, be no serious question as to the validity of provisions under which all the railroads in Texas have been built, especially where they are construed as we have construed them and applied to those places to which we have held them to be applicable. We have restricted our inquiry to the question whether or not Texhoma is a "place of starting," the further question whether or not it is also a junction in the sense of the statute and is, because of that fact alone, a point at which there must be a station involving other considerations which need not be discussed.
The judgment of the Court of Civil Appeals will he reversed and judgment will be here rendered that the injunction granted in this cause be dissolved and that the plaintiff's cause be dismissed.
Reversed and rendered. *Page 399