ANGELINA & N. R. R. CO. v. RAILROAD
COMMISSION OF TEXAS.
(No. 6209.)

(Court of Civil Appeals of Texas. San Anto-
nio. April 30, 1919. Rehearing De-
nied May 28, 1919.)

1. TRIAL ⨀351(5) — INSTRUCTIONS — ISSUES
COVERED IN GENERAL CHARGE.

Refusal to give certain issues to the jury in
a special charge is not error, where such issues
were sufficiently given in the general charge.

2. RAILROADS ⨀9(2) — STATIONS — SUIT TO
ENJOIN RAILROAD COMMISSION—BURDEN OF
PROOF.

Under Rev. St. art. 6654, subd. 12, and
article 6693, the burden rests upon a railroad
company, assailing an order of the Railroad
Commission requiring it to maintain a depot at
a certain station, to show the unreasonableness
of the exercise of the power vested in commis-
sion by statute.

3. RAILROADS ⨀225—OPERATION—ACCOMMO-
DATIONS AND FACILITIES AT STATIONS.

Rev. St. art. 6589, requiring every railroad
to erect at every station established by it for
the reception and delivery of freight suitable
buildings to protect such freight, is mandatory,
and to secure compliance therewith it is the
duty of the Railroad Commission to order a
railroad company which maintains only a shed
at a town containing several stores, mills, etc.,
to erect a depot there, sufficient to handle the
freight and passenger traffic.

4. RAILROADS ⨀226 — STATIONS—ENFORCE-
MENT OF ORDERS OF RAILROAD COMMISSION
—EXPENSE TO RAILROAD.

A railroad company cannot evade the stat-
utory duty imposed upon it to erect and main-
tain suitable depots at each of its stations and
entirely ignore public convenience and accom-
modation, because of increased expense to the
company.

5. RAILROADS ⨀226—POWERS OF RAILROAD
COMMISSION—AGENTS AT STATIONS.

The duty imposed upon a railroad by Rev.
St. § 6693, to provide and maintain adequate
depots at every station for accommodation of
passengers and to keep them well lighted and
warmed carries with it by necessary implication
the furnishing of agents at such stations, and
the Railroad Commission has power to secure
compliance therewith.

6. RAILROADS ⨀226—REGULATION — PROVI-
SIONS OF MANDATORY STATUTE—REASONA-
BLENESS OF ORDER.

An order of the Railroad Commission to
compel compliance with a mandatory statute
requiring the erection of suitable depot build-
ings at stations is not subject to a test of rea-
sonableness; the only question of reasonable-
ness possible being as to the kind of buildings
required to be built.

Appeal from District Court, Travis Coun-
ty; George Calhoun, Judge.

Suit by the Angelina & Neches River Rail-
road Company against the Railroad Commis-
sion of Texas to set aside a certain order
of the Commission. A temporary writ of in-
junction was applied for by the Railroad
Company and granted. From an order dis-
solving the writ of injunction, the Railroad
Company appeals. Affirmed.

Mantooth & Collins, of Lufkin, for appel-
lant.
C. M. Cureton, W. J. Townsend, and John
L. Peeler, all of Austin, for appellee.

FLY, C. J. In this suit appellant seeks to
cancel and annul an order requiring appel-
lant to provide and maintain at Etoile, a
station on its line; an adequate and suffi-
cient passenger and freight depot facilities,
and to place an agent in charge thereof to
accommodate the traveling public and freight
going from and arriving at the station, and
requiring appellant to furnish plans and
specifications, within 20 days from date of
the order, to appellee. A temporary writ of
injunction was applied for and granted. The
cause was tried by jury upon special issues,
and the temporary writ of injunction was
dissolved, and judgment rendered requiring
appellant to comply with the order of the
Railroad Commission of Texas.

The court submitted the cause to the jury
on two issues: First, as to whether the re-
quirement by appellee was unjust and un-
reasonable; second, as to whether the re-
quirement of the order that an agent should
be kept at such station was unjust and un-
reasonable. Both issues were answered in
the negative. We conclude that the evidence
fully sustains the answers of the jury.

The fourth and eighth assignments of er-
ror are grouped; the fourth complaining of
a charge to the effect that the statutes of
Texas make it the duty of each and every
railroad to provide and maintain adequate,
comfortable, and clean depots and depot
buildings at its several stations for the ac-
commodation of passengers and freight; the
eighth complaining of the refusal of a special
charge which in effect took the case from
the jury in requiring a verdict for appel-
lant because the order of appellee is in con-
travention of the federal and state Consti-
tutions, in that it took appellant's property
and applied it "to public and private use
without just compensation." It is question-
able whether the two assignments are prop-
erly mated and joined together, a twain cor-
rectly made one; however, they will be con-
sidered.

In article 6654, subd. 12, Revised Statutes,
it is provided that it shall be the duty of
each and every railroad to—

"provide and maintain adequate, comfortable
and clean depots and depot buildings at its sev-

eral stations for the accommodation of passengers; and said depot buildings shall be kept well lighted and warmed for the comfort and accommodation of the traveling public; and all such roads shall keep and maintain adequate and suitable freight depots and buildings for the receiving, handling, storing and delivering of all freights handled by such roads."

The same provisions are made in article 6693, with the addition of a requirement that separate apartments be kept and maintained for the use of white and negro passengers. The charge of which complaint is made is couched in the language of the statute, and appellant complains that the statutory requirements, which the court was placing before the jury should have been burdened with conditions about the revenues of the railroad during its existence as a common carrier, and that appellant was entitled "to a reasonable and just compensation for services rendered and a return on its investment made and money expended in carrying on the business, as in the absence of such consideration the orders of the railway company would be unjust and unreasonable." The court correctly instructed the jury as to the statutory duties of railroad companies in connection with depot buildings, and then in a succeeding paragraph of the charge the jury were instructed:

"The statutes of this state provide that, if any railroad within this state shall be dissatisfied with any order or regulation made by the Railroad Commission of Texas, such railroad, so dissatisfied, may enjoin the enforcement of such order of the Railroad Commission, provided such railroad company can show by clear and satisfactory evidence that such order of the Railroad Commission is unreasonable and unjust to such railroad company."

This is the law of Texas, and appellant feels aggrieved because it was not ignored and a rule in defiance of it given to the jury, placing the burden on appellee to prove matters not required by the statute.

[1] The issues sought to be submitted by appellant in its fourth special charge were given clearly and succinctly by the court in the general charge, and a reiteration of them could not have been productive of good to any one. No valid reason is offered as to why it could be error to refuse to duplicate the giving of the issues to the jury, and the propositions offered under the two assignments, named the "first assignment of error," do not seem to logically arise from the matter contained in the assignments of error, and are far-fetched, and not germane. In the first proposition is the complaint that the court should not have submitted the issue of the reasonableness and justness of the order to the jury, and that under an assignment which assailed the action of the court in refusing a special charge which sought to have the question of reasonableness and un-

justness of the order resubmitted to the jury. The assignment is overruled.

Appellant claims that it was an issue as to whether the courts are bound to accept as final the determination of the Railroad Commission that there is a public necessity for a station at Etoile. There was no such issue raised in this case, although it should have been; for, if any such issue had been sustained, appellant would not be appealing from a judgment based on the verdict of a jury, but from one of dismissal of the cause of action. There was but one, if any, issue to go to a jury, and that is: Was the order of the commission, under the facts, reasonable and just? The jury, under sufficient and competent facts, have answered the issue in the affirmative.

[2] The question of reasonableness of accommodations for passengers and freight at stations is lodged primarily with the Railroad Commission, and when an action by that tribunal is assailed, the burden rests upon the assailant to show the unreasonableness of the exercise of the power vested in it by the statutes, which imperatively demand the erection of depots at stations. The orders of the commission along the lines and within the bounds of the statutes must be deemed just and reasonable and proper until the improvements demanded are shown, by clear and satisfactory evidence, to be unjust and unreasonable. Etoile is admitted by appellant to be a station on its line of railway, and it is uncontroverted that it has no facilities for protecting or taking care of passengers who may embark or disembark there, and that its little shed is utterly incapable of protecting freight from the weather or from "thieves that break through and steal." It had made no effort to comply with the laws of the state in regard to stations. Those laws have met the approval of England and America for many years, and they are sanctioned and fashioned by the requirements of the common law. There was no testimony tending to show that any costly or extravagant improvements had been demanded by appellee, but simply "an adequate and sufficient passenger and freight depot building and depot facilities and install and maintain at said station an agent for the proper accommodation of the traveling public and business of said station as required by law." Appellant does not want to build any depot, however humble it might be, nor furnish any agent, however cheap and inefficient he might be. It simply refuses to obey any part of the order, and is claiming that it is utterly unreasonable to require it to have any place at Etoile, one of its stations, to shelter its passengers from inclement weather or protect its freight, or to have an agent to sell tickets or give bills of lading or receive freight. If it should entail a loss for the time being to make the improvements de-

sired, that would not be proof of the unreasonableness of the order. Most improvements of new enterprises are at first liabilities rather than assets and out of proportion to the income, but it must be taken into consideration that improvements will usually bring an increase of patronage and eventually pay for themselves. Again, the rights of the people that spoke the corporation into existence are superior to those of its creature, and an inability to give service would not be an argument in favor of not compelling it to obey the law, but rather an argument in favor of ending its existence or placing it in the hands of a receiver. However, the comparatively small sum that will probably be required to build a depot building as ordered by the appellee cannot affect the solvency of appellant.

[3] In article 6589, formerly article 4519, every railroad company is required to—

"erect at each and every depot, station or place established by such company for the reception and delivery of freight, suitable buildings or inclosures to protect produce, goods, wares and merchandise and freight of every description from damage by exposure to the weather, stock or otherwise. * * *"

In R. R. Comm. v. Railway, 102 Tex. 393, 117 S. W. 794, it is held:

"'Stations,' as here meant, are the places at which passengers and property are received for transportation, or delivered after transportation."

Etoile was voluntarily established by appellant as a station, as defined by the Supreme Court, and the law made it the imperative duty of appellant to build a depot and furnish accommodations for passengers and freight. It was not incumbent upon it to establish a station there, perhaps, but, when it did so, it should be compelled to furnish the statutory accommodations. The evidence shows that Etoile is a town with five or six stores, a telephone exchange, post office, two gristmills, schoolhouse, gin and saw mill and two systems of telephones. The requirement of the statute that a depot building should be erected at such a place is mandatory, and it was the duty of the Railroad Commission in compliance with law to order appellant to perform its statutory duty. It might as well be contended that it would be unreasonable to keep its roadbed so trains could run over it, or to have headlights on its engines, as to claim that it is unreasonable to require, not a certain kind of depot, but any depot at an established station where there was passenger and freight traffic. The question presented in this case is not one of general rules and regulations, promulgated by the Railroad Commission, but an order applying to a single railroad under a certain state of facts. In the first the reasonableness of the general rules, not depending upon facts, would be a matter of law to be determined by the court, as held by the Supreme Court in Austin v. Cemetery Association, 87 Tex. 338, 28 S. W. 528, 47 Am. St. Rep. 114, and by the Court of Civil Appeals in Railroad Commission v. Railway, 16 Tex. Civ. App. 129, 40 S. W. 526, 1052. If, however, as contended by appellant, the reasonableness of the order should have been determined by the court, appellant is in no position to complain because it sought in every way it could to have the question submitted to the jury, and if that question had not been submitted, there was no question to go to the jury, and an instructed verdict would have followed. We are of opinion that even the issue of reasonableness of the order did not arise.

[4] It was a statutory exercise of power to require the erection of the necessary improvements to accommodate the passengers, whether numerous or few, who responded to the invitation of appellant to enter and leave the train at Etoile. As said in the cited case of Railroad Commission v. Railway:

"The railroad companies have never urged, nor can they successfully urge, that they should not be required to transport in carload lots because the delay and switching of the car at point of destination or having it unloaded there will result in inconvenience and expense to the company. The interest of the public requires of the railway companies that they shall maintain their tracks and rolling stock in a reasonably safe condition, and that they shall offer to the public adequate and proper facilities for transportation, and they are required, in the pursuit of diligence and care, to do many other things. All of these duties occasion an expense to the railway companies. Without doing these things and performing these duties the railway companies could possibly operate their roads at a less cost and expense, but in this age it is not seriously contended that the extra cost and expense connected with the observance of these duties * * * will excuse the roads from performing them. In the performance of these duties it is difficult to determine the extent of the benefits to result to the public, but in a general way it must be admitted that to some extent it exists, but the difficulty lies in ascertaining the extent of it and measuring it. But the recognition of the existence of some appreciable benefit to result to the public from the performance of many of these duties removes the only obstacle in the way requiring their performance. The moment it is admitted that the public interest requires the service, the railway company must stand ready to perform it; and the fact that this may occasion a reasonable cost and expense will not relieve the railway from its duty."

A writ of error was refused in that case.

In this case, unlike that from which we have quoted, the public convenience and accommodation is ignored, and an evasion of statutory duty is sought to be excused by a plea of expense to the railway company. There may not be many passengers who seek

to embark or disembark at Etoile, but they have the same protection extended to them by a mandatory statute as those at a place where hundreds daily board the trains, and a corporation will not be permitted to violate a positive statute and put dollars at a higher premium than human comfort, health, and safety. The public has some rights to guard and protect while we are protecting the bank account of the corporation. If appellant has reaped a revenue of only $62.32 a month during a period of dire drouth and failure of crops from the station at Etoile, it may be that better service will increase the revenue, by increasing patronage. There is no evidence, as claimed, that the revenue at Etoile will decrease in the future. The Railroad Commission heard the evidence of appellant as to the reasonableness of its order, the district court and jury heard that evidence, and both tribunals have declared the order reasonable and just, and no valid reasons have been offered in this court to justify a setting aside of the order.

[5] While the statutes bearing on railroads do not in terms require agents to be furnished at railway stations and do not in terms authorize the Railroad Commission to make such appointment, it becomes a duty, and such authority arises by imperative implication from the many duties placed upon railway companies and the authority given the Railroad Commission to enforce compliance with such duties. The statutes require that freight shall be delivered to the owner, agent, or consignee, that baggage shall be checked when taken for transportation "by the agent or servant of such corporation"; that they shall erect suitable buildings at stations for the protection of passengers and freight, and shall keep depots or passenger houses lighted and warmed and open to egress and ingress of all passengers for an hour before the arrival and after the departure of trains, and other duties which cannot be performed without the presence of an agent or servant. The Railroad Commission is given special and plenary power, not hampered as in the fixing of rates by the reasonableness of them, to require compliance with the terms of article 6693 as to providing and maintaining "adequate, comfortable and clean depots and depot buildings at their several stations for the accommodation of passengers, and to keep said depot buildings well lighted and warmed for * * * the accommodation of the traveling public." The depot buildings could not be automatically lighted and warmed, but the presence of an agent or servant would necessarily be required to perform those duties. The authority to require compliance with the statute would be futile and vain if it did not carry with it the authority to require the presence of such agent or servant. All reasonable canons of interpretation and construction would necessarily involve such authority. A statute

should not be enlarged by implication unless it is necessary to make it accomplish the design for which it was enacted. But, if that be necessary, the implication will be indulged in. Yatter v. Smilie, 72 Vt. 349, 47 Atl. 1070; Lewis-Sutherland Stat. Cons. §§ 500–508. As said in the section last quoted:

"Whenever a power is given by statute, everything necessary to make it effectual or requisite to attain the end is implied. It is a well-established principle that statutes containing grants of power are to be construed so as to include the authority to do all things necessary to accomplish the object of the grant. The grant of an express power carries with it by necessary implication every other power necessary and proper to the execution of the power expressly granted."

See, also, sections 510 and 511, same textbook.

The same subject has been treated and the same rules enunciated in Texas. In the case of Callaghan v. McGown, 90 S. W. 319, this court held:

"The proposition under the fourth assignment that, 'where the statute fails to confer on the officer sufficient powers to perform all necessary functions incident to the public service, and his partial exercise of authority will only serve to confuse and confound the government, no effect will be given to the law, and it will be treated as nugatory,' is not supported in appellants' brief by citation of authorities, and none can be found to sustain it. On the contrary, the rule is that, whenever a power is given or a duty is imposed by statute, everything necessary to make that power effectual or essential to the performance of the duty is conferred by implication upon the person or body given the power or charged with the performance of the duty in the absence of express authority"—citing Mayor v. Sands, 105 N. Y. 210, 11 N. E. 820.

In the case of Brown v. Clark, 102 Tex. 323, 116 S. W. 360, 24 L. R. A. (N. S.) 670, it was held:

"It is elementary that the grant of specific power, or the imposition of a definite duty upon any person or court, confers by implication the authority to do whatever may be necessary in order to execute the power conferred or to perform the duty imposed, and the implied power is as much a part of the statute as if it were written into the body of the act itself."

To the same effect is Spence v. Fenchler, 107 Tex. 443, 180 S. W. 597.

The subject is thus treated in Elliott on Railroads, § 685:

"A Railroad Commission, although it is a statutory tribunal, with naked statutory powers, necessarily possesses some incidental or implied powers such as by necessary implication result from the principal powers granted by the statute creating the commission."

[6] It must be kept in mind that appellee did not seek to name a place where a station should be established; for appellant

had already established it. All that appellee sought to do was to compel obedience to a mandatory statute which commanded appellant to build a suitable house to accommodate its passenger and freight traffic at Etoile. There was nothing unreasonable or unjust in a request that appellant should obey the laws of the state which created it; such laws being read into and becoming a part of the instrument that gave it existence—its charter.

The court did not err in refusing the special charge numbered 1 asked by appellant. The statute required the depot to be erected at the station at Etoile, which had been established by appellant, and the appellee had ordered it built as required by statute. Appellant got all it was entitled to when it had the reasonableness and justice of its being compelled to obey the law of the state submitted to a jury, and it had no right to ask that its obedience to law should be contingent on whether it was making money. No such condition or contingency appears in the statute, no more than in any other statute, federal or state, requiring the performance of certain duties. It could dispense with automatic couplers, or grabirons, handholds, foot stirrups, or sidings or spur tracks, or locomotive driving wheel brakes or drawbars, or separate apartments for the races, or any other appliance required, on the plea that it was not making money. The authorities cited by appellant do not sustain its contentions. No constitutional, no equitable right is sought to be taken from appellant, but it is merely asked to obey the laws of the state under which it is operating.

The evidence indicates that appellant conducted its business in a slipshod manner, with little regard to the accommodation of the people residing along or in the vicinity of its line, and is being run in the interest of a lumber company whose stockholders and directors are the stockholders and directors of the railroad company. It is a fair deduction from the testimony that the road was built to enhance the value of the property of the lumber company, and inure to its benefit, regardless of the rights of those who lived along the line or in the country tributary to it.

However, we are of the opinion, as hereinbefore indicated, that the court would have been justified in dismissing the suit or instructing a verdict for appellee, because under a mandatory statute requiring the erection of suitable depot buildings at stations the order to comply with that law was not subject to a test of reasonableness, and the only question as to the reasonableness and justice of the order of the Railroad Commission could arise as to the kind of buildings required to be built. The plans of the building have never been submitted to appellee, and no order has been issued requiring the building of improvements costing any certain sum. An adequate building might cost $100, $250, or $500, but no order has been made fixing the cost.

The judgment is affirmed.