RAILROAD COMMISSION OF TEXAS v.
PECOS & N. T. RY. CO.   (No. 6205.)

(Court of Civil Appeals of Texas. San Antonio.
May 7, 1919.   Rehearing Denied May 28,
1919.)

1. TRIAL ⊜═352(5)—SPECIAL ISSUE—ASSUMP-
TION AS TO FACTS.

In action to enjoin enforcement of Railroad
Commission's order requiring railroad to con-
struct depot building at certain point, where spe-
cial issue was whether railroad had designated
depot grounds at such point, requested addition
to issue that designation once made could not
afterwards be changed by railroad was proper-
ly refused, since it would have been regarded
as an intimation by court of abandonment, and
since issue could not have been answered in
negative upon ground of abandonment.

2. RAILROADS ⊜═58—"STATION"—DESIGNA-
TION.

Under the statutes a place may become a
"station" either by designation by the railroad,
or by designation by statute, or by being estab-
lished as a siding or stopping place to receive
and discharge passengers and freight.

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Station.]

3. TRIAL ⊜═352(4) — SPECIAL ISSUE — EVI-
DENCE.

In action to enjoin enforcement of Railroad
Commission's order requiring construction of
depot building at certain place, where there was
no evidence tending to show creation of station
at such place otherwise than by designation of
depot grounds, court properly refused to submit
issue of whether railroad established a siding
or stopping place at such place or nearby sta-
tions.

4. RAILROADS ⊜═9(2)—ORDER TO CONSTRUCT
DEPOT BUILDING — REASONABLENESS —
AMOUNT TO BE EXPENDED.

In action to enjoin enforcement of Railroad
Commission's order requiring construction of
depot building at certain place, the only ques-
tion as to the unjustness and unreasonableness
of the order, in view of Rev. St. 1911, art.
6693, is whether sum required to be expended
is reasonable.

5. RAILROADS ⊜═58—DEPOTS—SPUR TRACKS—
STATUTES.

Rev. St. 1911, art. 6552, if construed so
as to require railroads to construct sidings and
spur tracks at stations, requires construction
thereof only where necessary for accommoda-
tions for transportation of passengers and
freight.

6. RAILROADS ⊜═9(2) — DEPOT BUILDING —
ORDER TO CONSTRUCT—REASONABLENESS.

The reasonableness and justness of Railroad
Commission's order requiring construction of
depot building and sidings and spur tracks,
whether made pursuant to Rev. St. 1911, art.
6552, or article 6715, depends upon the facts of
the particular case.

7. RAILROADS ⊜═9(2) — ORDER REQUIRING
CONSTRUCTION OF DEPOT BUILDING — SID-
INGS—REASONABLENESS OF ORDER.

In action to enjoin enforcement of Railroad
Commission's order requiring construction of
depot building, spur tracks, and sidings, special
issue as to reasonableness of order was properly
applied to both building and sidings, since it
will not be assumed that sidings and spur tracks
are indispensable to all stations.

8. RAILROADS ⊜═9(2)—CONSTRUCTION OF DE-
POT BUILDING—SIDINGS—REASONABLENESS
OF ORDER—EVIDENCE.

Evidence held to support verdict finding Rail-
road Commission's order directing construction
of depot building, sidings, and spur tracks at ex-
pense of from $250 to $500 to be unfair and
unreasonable to railroad.

9. RAILROADS ⊜═9(2) — DEPOT BUILDING —
REASONABLENESS OF ORDER TO CONSTRUCT.

In passing upon reasonableness of Railroad
Commission's order requiring construction of
depot building at certain place, court will con-
trast expense of complying with order with in-
convenience and hardships imposed on the pub-
lic by reason of absence of facilities ordered.

10. RAILROADS ⊜═9(2) — DEPOT BUILDING —
SIDINGS—ORDER TO CONSTRUCT—REASONA-
BLENESS—EVIDENCE.

Evidence as to extent of shipment made by
persons living in certain vicinity is admissible
upon question of reasonableness of Railroad
Commission's order that depot building and spur
tracks and sidings be constructed at such point.

11. TRIAL ⊜═85 — EVIDENCE — GENERAL OB-
JECTION.

There is no error in overruling general ob-
jection to evidence a portion of which is admis-
sible.

12. RAILROADS ⊜═9(2) — DEPOT BUILDING —
SIDINGS — REASONABLENESS OF ORDER TO
CONSTRUCT—EVIDENCE.

In action involving reasonableness of Rail-
road Commission's order requiring construction
of depot building, sidings, and spur tracks at
certain place, evidence as to gross shipments to
and from station 3½ miles distant therefrom
during past four years, though remote, is of
aid to jury on issue of reasonableness, tending
to show increase of business in that section.

13. APPEAL AND ERROR ⊜═1050(1)—REVIEW—
HARMLESS ERROR.

In action involving reasonableness of order
requiring construction of depot building and
sidings at certain place, admission of evidence
of population and growth of nearby town was
not reversible error, where other testimony had
been introduced without objection comparing the
two places.

Appeal from District Court, Travis Coun-
ty; George Calhoun, Judge.

Action by the Pecos & Northern Texas
Railway Company against the Railroad Com-
mission of Texas.   Judgment for plaintiff,
and defendant appeals.   Affirmed.

⊜═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

B. F. Looney, of Greenville, Luther Nickels, of Eastland, and N. A. Stedman, of Austin, for appellant.

W. H. Kimbrough and Madden, Truelove, Ryburn & Pipkin, all of Amarillo, and Brooks, Hart & Woodward and Charles L. Black, all of Austin, for appellee.

MOURSUND, J. On February 25, 1914, the Railroad Commission made the following order:

"Office of Railroad Commission of Texas.

"Austin, Texas, February 25, 1914.

"Hurley, on P. & N. T. Ry., Petition for Depot and Station Facilities.

"Hearing No. 1446.

"The above numbered and entitled cause having been called for hearing by the commission on the 16th day of December, 1913, in pursuance of notice duly given, and the parties hereto having appeared by their representatives, the commission, having heard the evidence and argument of counsel, and having taken the matter under advisement, and having now duly considered the same, finds that Hurley is a station on what is known as the Texico-Lubbock cut-off of the Pecos & Northern Texas Railway Company, and that said Pecos & Northern Texas Railway Company is under the duty of providing and maintaining an adequate depot and depot building at said station for the accommodation of passengers, and to keep and maintain an adequate freight depot and building at said station for the receiving, handling, storing, and delivering of freight, and to build sidings and spur tracks sufficient to handle all the business tendered said railway company at said station; and the commission further find that one building to be constructed of such material and design as said railway company may determine, and at a cost of not less than $250, and not more than $500, within the discretion of said railway company, will be sufficient for the present needs of the public in the accommodation of both freight and passenger business of said station of Hurley.

"It is therefore ordered by the Railroad Commission of Texas that said Pecos & Northern Texas Railway Company be, and it is hereby, ordered and required, within 60 days after the delivery of a copy of this notice to its general manager, to erect and complete at said station of Hurley a building of such material and design as said railway company may determine, and at a cost within its discretion of not less than $250 and not more than $500, such building to be suitable for the accommodation of both passengers and freight, and that said railway company shall within said period of 60 days build such sidings and spur tracks at said station as will be sufficient to handle all business tendered said railway company at said station.                    William D. Williams,

"Earle B. Mayfield,

"Commissioners.

"Attest:

"E. R. McLean, Secretary."

On April 14, 1914, the P. & N. T. Ry. Co. filed its petition in the district court of Travis county asking for an injunction to restrain the enforcement of such order. The order was attacked upon two grounds: (1) That the railroad company had never designated Hurley as a station on its line, and consequently could not be required to furnish facilities at such place; (2) that the order was unreasonable and unjust to the company, and therefore should be set aside under the terms of articles 6657 and 6658, Revised Civil Statutes.

The answer consisted of a general demurrer, special exceptions, and a general denial.

The first trial resulted in a judgment against the railroad company, from which it appealed, and procured a reversal thereof. The case is reported in 193 S. W. 770.

The judgment from which this appeal was taken is based upon the findings of the jury upon two special issues, which, with explanatory instructions and the answers of the jury, are as follows:

"Question 1. Did the Pecos & Northern Texas Railway Company, at any time prior to the institution of proceedings before the Railroad Commission of Texas, designate depot grounds at Hurley? Answer this question 'Yes' or 'No.'

"In connection with the above question, you are instructed that, in determining whether depot grounds were designated by the railway company at Hurley, it is not necessary that such depot grounds should be in or within the town of Hurley as platted, but it would be sufficient if the place at which such depot grounds were designated, if they were designated at all, was within a reasonable distance from the town of Hurley as platted, provided that, in view of the attending circumstances, you believe from the evidence that a place near, but not within, the town of Hurley, was a reasonable designation of that place as the site for the depot grounds. And you are further instructed that the term 'depot grounds,' in legal contemplation, signifies the same thing as a railroad station."

To this issue the jury answered "No."

"Question 2. Was the order of the Railroad Commission of Texas entered on February 25, 1914, offered in evidence in this case, requiring the plaintiff, the Pecos & Northern Texas Railway Company, to erect and complete at a place called Hurley a building of such material and design as said railway company might determine, and at a cost within its discretion of not less than $250 and not more than $500, such building to be suitable for the accommodation of both passengers and freight, and requiring said railway company to build such siding and spur tracks at said place as would be sufficient to handle all business tendered said railway company at said place, unreasonable and unjust to said railway company as to the amount which would be required to be expended thereby?

"Before you would be justified, under the law, in answering this question in the affirmative, the plaintiff herein, the Pecos & Northern Texas Railway Company, must have shown to you by clear and satisfactory evidence, that said order was unreasonable and unjust to it."

To this issue the jury answered "Yes."

[1] It is contended that the court erred in refusing to submit, at defendant's request, the following addition to question No. 1:

"The designation once made by the railway company of depot grounds at a particular place cannot afterwards be changed by the company."

The question asked was whether the railway company, at any time prior to the institution of proceedings before the Railroad Commission, designated depot grounds at Hurley. If there had been added to this question the statement requested by defendant, it might have been received as an intimation by the court that the company had attempted to abandon depot grounds designated by it. The special issue could not have been answered in the negative upon the theory that there had been on abandonment, as the question was plainly drawn, and it may be presumed that counsel in argument emphasized the limited scope of the inquiry made. The first assignment is overruled.

The further contention is made that the court should have submitted the following issue:

"Because the court erred in refusing to submit to the jury special issue No. 1, requested by the defendant, the same being as follows: 'Did the Pecos & Northern Texas Railway Company at any time prior to the institution of proceedings before the Railroad Commission of Texas establish the place referred to in evidence as Warren's Siding, Muleshoe, or Hurley, as a siding and stopping place for receiving and discharging way passengers and freight?'"

This special issue was refused by the court pursuant to the suggestion upon the former appeal that only one issue be submitted.

[2] As we understand our statutes, in view of the light thrown thereon by the opinion in the case of Railroad Commission v. C., R. I. & G. Ry. Co., 102 Tex. 393, 117 S. W. 794, a place may become a station either by designation by the railroad company or designation by statute, or by being established as a siding or stopping place to receive and discharge passengers and freight.

[3] The only evidence relied on in this case to show the existence of a station, as far as is pointed out to us, related to the issue whether there had been a designation of depot grounds at Hurley. If there is any evidence tending to show the creation of a station at Hurley otherwise than by designation of depot grounds, it has not been called to our attention. This being the case, it appears to us that the additional issue, if given, could have served no useful purpose and might have confused the jury. The issue as submitted directed the minds of the jurors to the direct issue raised by the testimony, and we hold that there was no error in refusing to submit the additional one. No error was committed with respect to the manner of submitting the issue whether there had been a designation of depot grounds. There is no contention that the evidence does not support the finding of the jury in favor of appellee on such issue.

It is contended by appellant that the only matter that should have been submitted with respect to the unjustness and unreasonableness of the order was whether the requirement for the erection by the railway company of the depot building at a cost of not less than $250 and not more than $500 was unjust and unreasonable. In support of this contention articles 6693 and 6552 of the Revised Statutes are cited and discussed.

[4] Article 6693 makes it the duty of railroad companies to provide adequate depot buildings at their several stations, and if Hurley is a station, the only question that can arise as to the unjustness and unreasonableness of an order requiring the erection of a depot building there is whether the sum required to be expended is unreasonable. Angelina & Neches River R. R. Co. v. R. R. Commission, 212 S. W. 703, recently decided by this court.

Article 6552 requires the furnishing of sufficient accommodations for the transportation of passengers and property, and it may be admitted that, if Hurley had become a station, an order requiring sufficient accommodations for the transportation of passengers and property could not be unjust and unreasonable, because it would exact only what the law requires, but no such order is under consideration in this case.

The order in question required the erection of a depot building and "sidings and spur tracks sufficient to handle all the business tendered said railway company at said station." The quoted portion does not indicate an attempt to enforce article 6552, but an attempt to exercise the authority conferred on the commission by article 6715. That article provides:

"All railroads in Texas shall be required to build sidings and spur tracks sufficient to handle the business tendered such railroads, when ordered to do so by the railroad commission, as hereinafter provided."

The next article is as follows:

"Power is conferred on the Railroad Commission of Texas to require compliance by railroad companies with the provisions of the preceding article, under such regulations as said commission may deem reasonable," etc.

These articles were enacted in 1903, and the emergency clause recited that there was no adequate law providing that railroads should build sidings and spur tracks sufficient to handle the business tendered them. We find that in the case of Crosbyton-Southplains R. R. v. Railroad Commission, 169 S. W. 1038, it is assumed that prior to the enactment of article 6715 the law required rail-

roads to build sidings and spur tracks at stations, and that said article was enacted for the purpose of conferring power to require that they be constructed at other places. In this connection it is stated that the Supreme Court, in Railway Co. v. R. R. Com., 98 Tex. 67, 80 S. W. 1141, gave article 6552 such a construction that it cannot be doubted that it was the duty of railroads to construct all necessary side tracks, switches, and spurs at their stations. We do not so understand the opinion referred to. It only involves, as we understand it, a construction of the language "the business tendered such railroads," contained in article 6715. Nor are we able to find any case to which the court could have had reference. We find that in the case of R. R. Com. v. Railway Co., 102 Tex. 393, 117 S. W. 794, the court questioned the construction placed on the language used in article 6552, made by the New York court in People v. Railway Co., 104 N. Y. 58, 9 N. E. 856, 58 Am. Rep. 484, to the effect that "sufficient accommodations' for the transportation," etc., did not require the erection of houses. Article 6552 was enacted in 1853 (section 9, Act Feb. 7, 1853 [Acts 4th Leg., Ex. Sess., c. 46]) and in 1860 the act of which it was a part was amended so as to require the erection of depot buildings (section 3, Act Feb. 8, 1860 [Acts 8th Leg. c. 51]). Thus early there appears to have been a doubt whether the language "accommodations for the transportation" related only to the means for hauling passengers and freight or should be given a broader construction. It can be plausibly argued that a requirement that the railroads shall furnish sufficient accommodations for the transportation of passengers and property at sidings established for receiving way passengers and freight was not intended to make a requirement that sidings should be constructed.

[5, 6] However, even if it be conceded that under article 6552 railroad companies are required to construct sidings and spur tracks at stations, the fact remains that there is no statute which expressly declares that such improvements must be made at all stations, as is the case with respect to depot buildings. The requirement would simply be that such improvements must be constructed, if necessary in order to furnish sufficient accommodations for the transportation of passengers and property. If this construction be correct, it follows that, whether authority be attempted to be exercised by the commission pursuant to article 6552 or article 6715, in either case its order would be one the reasonableness and justness of which would depend on the facts of the particular case.

[7] The objection that question No. 2 should have been confined to the depot building is based on the assumption that sidings and spur tracks are indispensable at all stations, no matter how small the amount of business. Such an assumption is not made by statute, as in the case of depot buildings, and cannot be indulged as a matter of law. The issue whether the order was unjust and unreasonable as to the sum required to be expended was therefore in the case with respect to the depot building and also to the sidings and spur tracks.

[8] It is contended there was no evidence that $250 was an unreasonable sum to be expended for a depot building, and the contention, we believe, is sustained by the record, but no objection was made to the inclusion of that item in the question propounded. The jury may have based its answer that the order was unjust and unreasonable upon a finding that the facts proven established that it would be unjust and unreasonable to require the appellee to expend even the minimum sum necessary to reasonably comply with that part of the order requiring the construction of sidings and spur tracks. The statements relied on to show insufficiency of evidence do not justify us in sustaining appellant's contentions, and we hold that the verdict with respect to the second issue is supported by the evidence.

Certain evidence was introduced over the objections of appellant which, it is contended, was inadmissible and prejudicial upon both issues submitted to the jury. This evidence was introduced upon the theory that it was relevant to the second issue.

The witness Davies testified that during the year 1914 the tonnage received at Muleshoe was 3,893 tons, and that forwarded from that station was 961 tons; also that for the year ending February 28, 1918, 9,582 tons were received and 5,909 forwarded. Holt testified that from March, 1917, to March, 1918, 7,576 tons were received, and from August, 1917, to March, 1918, 1,996 tons were forwarded; also that 68 tons were received for persons whose post office was Hurley and 40 tons forwarded for them. Rees testified that from January 1, 1914, to April 30, 1915, 8,000,000 pounds of freight was received at Muleshoe, of which about 300,000 pounds was for Hurley parties. All of this testimony was objected to on the ground that it was immaterial and irrelevant and calculated to mislead and confuse the jury. Muleshoe is a station 3.4 miles east of Hurley. The distance by wagon road is 5½ miles. There is a siding, known as Lariat, 9 miles northwest of Hurley, and Farwell is a station 18 miles northwest of Hurley. The shipping to and from persons residing north of the railroad, and between Muleshoe and Farwell, goes to Muleshoe, Lariat, or Farwell. Farwell appears to be a place of considerable importance, as the evidence shows that it has wholesale establishments. The evidence disclosed that much of the freight for Hurley was hauled by wagon from Farwell. There was evidence

to the effect that carload business for people between Hurley and Lariat was largely handled at Lariat; also that much of the freight for Hurley was hauled from Farwell. The testimony disclosed that there were two settlements, known as Big Square and Spring Lake, situated north of Muleshoe and Hurley. It was admitted that one of these was equally distant from both places, but as to the other there was some controversy, it being contended by one of appellee's witnesses that it was three miles closer to Muleshoe, while one of appellant's witnesses testified that there was not a half mile difference in the distances. The shipping to and from these settlements goes to Muleshoe. The witnesses who undertook to state how much freight was received for and shipped for Hurley parties either limited their statements to persons who received their mail at Hurley or who lived west of a line halfway between Muleshoe and Hurley, and not exceeding five miles north or west of Hurley. This excluded all business from Big Square and Spring Lake.

[9-12] In passing on an issue whether an order is unjust and unreasonable, it becomes necessary, of course, to consider the expense required of the railroad company and to contrast the same with the inconvenience and hardships imposed on the public by reason of the absence of the facilities ordered to be furnished. There is necessarily involved an inquiry as to the number of persons whose interests are involved and the extent of their interests. It was therefore a material inquiry how much freight was shipped to and from persons whose convenience would be subserved by making Hurley a shipping point. The testimony, therefore, as to the extent of shipments made by persons living in the vicinity of Hurley was not subject to the objection urged thereto. It therefore appears that as to the witnesses Holt and Rees part at least of the testimony objected to was admissible, and the court did not err in overruling the general objection made to all of the testimony. Dolan v. Meehan, 80 S. W. 99; Railway v. Gormley, 91 Tex. 393, 43 S. W. 877, 66 Am. St. Rep. 894. The testimony of Davies related solely to the gross shipments to and from Muleshoe, and a comparison is made which shows an enormous increase between the business and income of the road between 1914 and 1918. It is true that this evidence is somewhat remote; still we cannot say that it would not aid the jury in determining the issue of reasonableness, for it at least showed to what extent railroad business had increased in the section in which Hurley was situated. The theory on which the contention is based that all of the testimony above discussed is prejudicial is that it involves a comparison between the respective merits of Muleshoe and Hurley as shipping points. Of course, a comparison could be made, but it must have been evident to the jury and fully pointed out in argument that there was no accurate basis for a comparison of tonnage.

[13] The witness Elrod testified, over objection, that the population and production of the Hurley territory had decreased during the past year and a half, and that the population east of Hurley had increased; also that there were about 17 families residing in the territory beginning halfway between Muleshoe and Hurley and extending five miles north and five miles west of Hurley and that there resided in Muleshoe about 20 families, and that the population of the east end of Bailey county extending from the Hurley district north to Parmer county and eastward to Lamb county is close to 200 people. The witness Johnson also testified, over objection, that the number of people residing on the Hurley town site was 25, and that east of a line halfway between Muleshoe and Hurley, outside of the town of Muleshoe, there are 36 families, or a total of 68 people, and that the population of Muleshoe is 97. The objection urged to all of this testimony was that it was immaterial, irrelevant, and calculated to mislead and confuse the jury. There can be no doubt that the inquiry as to how many people would be served by the facilities ordered furnished was material. The objection in each instance was general, and made to all the testimony stated in the bill of exception. The court therefore did not err in overruling such objections. However, there appears to be little merit in the theory that the testimony regarding Muleshoe's population and growth, complained of in the brief, if separately objected to, could be deemed to require a reversal. The theory is that the comparison between Muleshoe and Hurley was prejudicial in that it probably led to a decision upon the false issue of the relative merits of the two places as sites for stations. The opportunity for comparison was furnished by other testimony admitted without objection. For instance, Elrod was permitted to describe the two places, which he did by mentioning each business establishment. The conclusion was inevitable that Muleshoe was a thriving and growing little town, while Hurley, abandoned by its population on account of inability to procure the establishment of a station, had gone steadily down. The witness Blocker was permitted to testify, without objection, that the population of Hurley was 30 people, and that 4 families had moved away; that the others would soon go not to return, and that no one had moved in.

We conclude that the assignments should all be overruled, and the judgment affirmed.